UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIAN FERRIS, BRIAN FERRIS CONTRUCTION, LLC, and NORTHERN HEIGHTS, LLC, | ) ) ) ) |
| Plaintiffs, | ) No. 3:10-CV-2014 (CSH) ) |
| v. | ) ) |
| TOWN OF GUILFORD, CARL A. BALESTRACCI, JR., JOSEPH MAZZA, GEORGE KRAL, REGINA J. REID, and LAURA L. FRANCIS, | ) ) ) **JANUARY 8, 2015** ) ) |
| Defendants. | ) ) |

**RULINGS ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**HAIGHT, Senior District Judge:**

This civil rights action involving land use regulation is brought under 42 U.S.C. §§ 1983 and 1988. Plaintiff Brian Ferris, a real estate developer, claims that decisions made by officials of two Connecticut towns violated rights conferred upon him by the United States Constitution. The case is before the Court on two separate motions by different defendants for summary judgment. This Ruling resolves those motions.

**I. FACTUAL BACKGROUND**

This factual account is taken from the pleadings, affidavits and exhibits submitted on the motions for summary judgment, and discovery conducted in the case.

The individual Plaintiff, Brian Ferris, is a citizen of the United States and the State of

1

Connecticut.  He resides in the Town of Guilford, Connecticut.  Ferris controls the two Plaintiff limited liability companies, Brian Ferris Construction, LLC and Northern Heights, LLC, which are headquartered in Guilford.  I will sometimes refer to the three Plaintiffs collectively as "Ferris."

Brian Ferris is a real estate developer.  According to Plaintiffs' Amended Complaint [Doc. 49], filed in compliance with a prior Ruling of the Court [Doc. 48], the Plaintiffs are the owners of a 148-acre parcel of land in the Town of Guilford and an adjacent 12-acre parcel of land in the Town of Durham, Connecticut.  Plaintiffs desire to construct a planned residential community on that land.  In that regard, Brian Ferris had discussions with a high-ranking officer of the United States Coast Guard, who approved the site and plans of the proposed development and declared the Coast Guard's intent to enter into agreements with the Plaintiffs by which "the Coast Guard would acquire residences constructed in the development to provide much-needed housing for Coast Guard servicepeople and their families."  Doc. 49 ("Amended Complaint"), p. 4-5, ¶ 7.  The development Ferris planned would consist of 35 three-bedroom homes.

To go forward with this undertaking, it was necessary for Ferris to apply to the appropriate officials of the Town of Guilford for such bureaucratic approvals as permits and certificates of occupancy.  Ferris began the process on February 11, 2005, when he submitted to the Town of Guilford a preapplication for a Planned Residential Development.

As the process went forward, Ferris also found himself involved with the land use authorities of the adjacent Town of Durham.  That came to pass because the sole public access to Ferris's planned development was the then-existing Crooked Hill Road, which lay entirely within Durham.  The development would be located in a hilly and largely unimproved rural area.  Ferris's planned development aroused the concern of Durham residents along or near the Crooked Hill Road, who

worried that the construction of a new 105-bedroom residential development (35 houses times 3 bedrooms in each) in the area would adversely impact local traffic and related conditions.

In order to address that concern, some Durham residents retained Rebecca Adams, an attorney, who states in an affidavit [Doc. 68, p. 68-80] that she "became aware early in 2005 that Mr. Ferris was applying to the Guilford Planning & Zoning Commission for a special permit to construct upwards of thirty houses on a piece of land in North Guilford. . . . When these citizens of Durham became aware that the Northern Heights subdivision [the Ferris project] was being proposed, and that the application included as part of its plan use of Crooked Hill Road in Durham as the sole access and egress from the subdivision, they and I, as their attorney, appeared at public hearings in Guilford to express our concerns about the possible effects of what had become a 35-house project in a relatively isolated and previously undeveloped area of North Guilford, near or at the Durham border. . . . Crooked Hill Road was, in my opinion and that of my clients, manifestly inadequate for the proposed increase of traffic required by a 35-house subdivision at its most remote end." Adams Affidavit, ¶¶ 5-7.

Attorney Adams and the Durham delegation, making their concerns known at hearings conducted by the Guilford Planning and Zoning Commission ("PZC"), achieved the respectful attention of that neighboring body. Following the close of a public hearing on November 2, 2005, the Guilford PZC approved Ferris's Final Application for Certificate of Zoning Compliance and the Subdivision Plans for the 35-house development, subject to specific conditions, which *inter alia* provided that "prior to approval of the Final Application":

> 2. (a) A plan for accomplishing all required road improvements within the Town of Guilford [shall] be approved by the Board of Selectmen.

> (b) The Town of Durham, including any required land use agencies (hereinafter collectively referred to as the "Town of Durham"), shall approve the proposed improvements to Crooked Hill Road within the Town of Durham.

*See* Doc. 68-1, Ex. U (Ferris's Notice of Appeal to state court from Guilford PZC decision of November 2, 2005, quoting PZC decision), p. 100, ¶7, sub-¶¶ 2(a)-(b).

Brian Ferris did not accept the Guilford PZC's November 2, 2005 decision, insofar as it conditioned Guilford's final approval of the proposed development upon the approval of Durham land use authorities. On November 23, 2005, Ferris filed an appeal from that decision with the Connecticut Superior Court, Judicial District of New Haven. Doc. 68-1, Ex. U. Ferris's counsel argued in the appeal that the Guilford PZC's decision was "illegal, arbitrary and unlawful" because, *inter alia*:

> a. It imposed illegal conditions on FERRIS by requiring him to make application for approvals from land use agencies and municipal entities over which the PZC had no control and which were in a separate municipality when the PZC was not reasonably certain that those agencies would grant the approvals necessary for the PRD [Proposed Residential Development] to be completed.

*Id.*, p. 102, ¶ 10(a). The "separate municipality" to which Ferris's argument refers is, of course, the Town of Durham. Ferris's appeal asked the Superior Court to limit the condition on PZC approval contained in ¶ 2(b) of its decision to requiring Ferris to submit to the Town of Durham plans for improving Crooked Hill Road, thereby deleting the condition that Durham land use authorities *approve* that work. Doc. 68-1, p. 104 (¶ 1).

Ferris did not perfect this appeal to the Connecticut Superior Court. He withdrew the appeal and, represented by counsel, entered into negotiations with the Town of Durham about development-required improvements to the Crooked Hill Road. Durham retained Attorney Rebecca Adams to

represent its interests. Adams says in her affidavit that she was "retained by the Durham Board of Selectmen as a Special Town Attorney to represent the Town in connection with this project and to negotiate an agreement with Brian Ferris, the Northern Heights developer and principal of Brian Ferris Construction, LLC and Northern Heights, LLC. . . . [M]y initial job was to negotiate the agreement regarding the improvements to Crooked Hill Road. Mr. Ferris was obliged to improve that road, which is the sole access to the Northern Heights subdivision he wanted to build, under the terms of the approval by the Guilford Planning & Zoning Commission." Doc. 68, p. 68-69 (¶¶ 2, 4).

Discussions ensued, involving Brian Ferris, his attorney, attorney Adams representing the Town of Durham, and Town of Guilford officials. The results of those discussions, which included an agreement between Ferris and Durham, are revealed by the minutes [Doc. 68-1, Ex. B, p. 8-9] of a special meeting of the Durham Board of Selectmen held on August 20, 2007. The meeting was held to consider a request by Ferris Construction to extend the then-existing deadline for commencing improvements to the Crooked Hill Road from August 15, 2007 to September 15, 2007. Adams reported on the outcome of a meeting of those concerned held on August 16, 2007. According to the minutes:

> She stated that Guilford was in agreement that the public safety of both residents of Guilford and Durham was foremost and that no CO's [Certificates of Occupancy] will be issued before work on Durham's Crooked Hill Road is complete. Brian Ferris commented that he hopes to get final approval on a private loan in the next two weeks for the road portion only of the project.

Doc. 68-1, p. 9. At its August 20, 2007 meeting, the Durham Board of Selectmen then approved the following motion, which I set forth in capital letters because that is the way it appears in the minutes:

> MOTION BY JAMES MCLAUGHLIN SECONDED BY RENEE EDWARDS TO EXTEND THE DATE OF COMMENCEMENT OF THE IMPROVEMENTS TO CROOKED HILL ROAD, AS SET FORTH IN THE CONSTRUCTION AGREEMENT BETWEEN THE TOWN OF DURHAM AND BRIAN FERRIS CONSTRUCTION, LLC TO SEPTEMBER 30, 2007 WITH THE FOLLOWING CONDITIONS: 1.) THAT ANY FUTURE REQUEST FOR AN EXTENSION OF THE COMMENCEMENT DATE BE MADE IN WRITING TO THE FIRST SELECTMAN OF THE TOWN OF DURHAM AT LEAST TWO WEEKS PRIOR TO SEPTEMBER 30 2007; 2.) THAT THE COMMENCEMENT OF IMPROVEMENTS AND THE BONDING OR FINANCIAL SECURITY THROUGH A LETTER OF CREDIT NOT BE CONSTRUED TO DISCHARGE THE RESPONSIBILITY OF BRIAN FERRIS CONSTRUCTION, LLC TO SUBSTANTIALLY COMPLETE THE IMPROVEMENTS OF CROOKED HILL ROAD PRIOR TO THE ISSUANCE OF ANY CERTIFICATES OF OCCUPANCY. ALL AYES.

*Id*. Defendants assert without contradiction that Brian Ferris was present at this meeting of the Durham Selectmen, and voiced no objection to the resolution I have just quoted. *See* Brief for Defendant Laura L. Francis [Doc. 68, p. 20].

The facts recited *supra* had all occurred prior to November 26, 2010, when the Ferris Plaintiffs began this action by filing the original complaint in the Connecticut Superior Court. Defendants removed the case to this Court on the ground of federal question jurisdiction. An Amended Complaint [Doc. 49] was filed on March 11, 2012. It is the current operative pleading. The Defendants are the same in both pleadings. The nature of Plaintiffs' claims are the same. Defendant Town of Guilford is a municipality. Defendants Carl A. Balestracci, Jr. and Joseph Mazza were at the pertinent times Selectmen of the Town of Guilford. Defendant George Kral was and is the Town Planner of Guilford. Defendant Regina J. Reid was and is the Certified Zoning Enforcement Officer of Guilford. I will refer to these Defendants collectively as "the Guilford

Defendants."  Lastly, Defendant Laura L. Francis was and is the First Selectman of the Town of Durham.

Ferris's 88-page Amended Complaint against these Defendants asserts, as its principal claim, the theory underlying the appeal Ferris filed in the Connecticut Superior Court: specifically, that the Town of Guilford acted illegally by conditioning its approval of Ferris's development project upon Ferris obtaining the approval of the Town of Durham of the Crooked Hill Road improvements Ferris was obligated to make before Guilford would issue certificates of occupancy for the homes Ferris proposed to build.  The Amended Complaint contains Twelve Counts, distributed among the several Defendants.  The paragraphs in each Count are numbered separately from the others.  ¶ 9 of each Count alleges:

> 9.  Neither Connecticut law nor any of the regulations of the Town of Guilford permits the Town of Guilford to condition the approval of a planned residential development on improvements or alterations to roads in adjoining towns.  Despite that fact, on May 28, 2008, the defendant Francis and the defendant Balestracci agreed between themselves that they would not permit Certificates of Occupancy to be issued to the plaintiffs unless the plaintiffs at vast expense reconstructed a road in the Town of Durham and that the plaintiffs further comply with "any other conditions that the Town of Durham may require."

The Amended Complaint claims that Plaintiffs suffered violations of their constitutional rights to equal protection of the laws and due process.  Plaintiffs seek money damages from each Defendant.  No equitable relief is prayed for against any Defendant.

The Guilford Defendants now move for summary judgment [Doc. 69].  Defendant Francis, the Durham First Selectman, moves separately for summary judgment [Doc. 68].  Those two motions will be discussed separately, in the order stated.

## II.  **DISCUSSION**

A.     **The Guilford Defendants' Motion for Summary Judgment**

The Guilford Defendants' motion for summary judgment raises a threshold question with respect to this Court's subject matter jurisdiction, which the Court would be required to raise *sua sponte* in any event.

The question that arises is whether this Court lacks subject matter jurisdiction over all Plaintiffs' claims on the ground that their complaint against the Guilford Defendants is not ripe for federal adjudication. It is clear that in the case at bar, that question must be answered in the affirmative. This Court lacks subject matter jurisdiction over Plaintiffs' claims.

In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186 (1985), the Supreme Court developed specific ripeness requirements applicable to land use disputes. The *Williamson* plaintiff, a land developer, claimed that the impact of zoning regulations upon the use of its property amounted to an unconstitutional taking. The Court held that before commencing its federal takings suit, the developer was required to obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations, and the developer was not entitled to bootstrap itself into a constitutional claim by refusing to pursue a local zoning appeal process.

While the Supreme Court decided *Williamson* in the takings context, the Second Circuit has extended the requirement of administrative finality to substantive due process, procedural due process and equal protection claims. *See, e.g., Dougherty v. Town of Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d Cir. 2002) (citing cases).

The Town of Guilford land use decision in the case at bar is the November 2, 2005 decision

of the Planning and Zoning Commission, which conditioned Guilford's approval of Ferris's development plans upon the Town of Durham's approval of the road improvements. An appeal from that decision was available to Ferris. He filed that appeal with the Connecticut Superior Court on November 23, 2005. The contention Ferris made in that state court appeal – the asserted illegality of Guilford's conditioning its approval of the development upon Durham's approval of the road improvements – is precisely the same as the contention Ferris makes in support of his constitutional claims. However, Ferris then withdrew his state court appeal before the Superior Court could consider its merits. Ferris's brief on these motions explains his conduct in this fashion:

> Ferris did initially file an administrative appeal, in November, 2005, when it became apparent that in order to proceed with Northern Heights, he would be required to rebuild a substantial portion of Crooked Hill Road in the Town of Durham. Within a couple of months, he changed course and withdrew the appeal, because, as a practical matter, delaying the project for two or more years in order to obtain a court decision, which might return him to the Town Boards for further proceedings, was futile from an economic point of view. In order to proceed with the project, he was compelled to accept the requirement that he finance the major road improvement in the neighboring town.

Doc. 77, p. 20-21 (citations to Exhibits omitted).

This is a an inadequate and unpersuasive excuse for a real estate developer who wishes to clothe an adverse local land use decision in the garb of constitutional deprivations. The Second Circuit has made it plain, in cases subsequent to *Williamson*, that available state law and state court remedies must be factored into the calculus of exhaustion of administrative remedies and ripeness for federal subject matter jurisdiction.

In *Murphy v. New Milford Zoning Commission*, 402 F.3d 342 (2d Cir. 2005), the Second Circuit cited *Williamson* and dismissed the plaintiff property owner's attempt to challenge a local

9

zoning commission's decision restricting the use of his property on the ground that the decision violated his constitutional rights. Judge Meskill ended the text of his opinion by saying: "Until this variance and appeals process is exhausted and a final, definitive decision from local zoning authorities is rendered, this dispute remains a matter of unique local import over which we lack jurisdiction." 402 F.3d at 354. At that point the opinion dropped footnote 8, which says:

> We are particularly cognizant of the fact that this case stems from a zoning dispute implicating matters of local concern. Thus, should the Murphys pursue a zoning board appeal and be dissatisfied with its disposition, an appeal to the Connecticut Superior Court, as contemplated by Connecticut General Statutes section 8-9, might be pursued. In addition, before the state courts the Murphys may wish to raise their CACRF claim, while expressly reserving their federal claims for later presentation in federal court *should the need arise*.

*Id.* n. 8 (emphasis added and citations omitted).

The Second Circuit's analysis in *Murphy* resonates in the case at bar because the attention paid by the Towns of Guilford and Durham to improving the Crooked Hill Road is prompted by a perceived need to ensure the safety of residents, a quintessential "matter of local concern." The quoted footnote with which the Second Circuit concluded *Murphy* shows that the need to present local land use disputes to a federal court does not arise (and consequently the disputes are not ripe for federal constitutional challenge) until a property owner has presented available, non-constitutional challenges to a state court.

*Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir. 1985), an opinion by Judge Mansfield, is to the same general effect. The owners of a motor vehicle junkyard business complained that the refusal of the West Haven, Connecticut Zoning Board of Appeals to give them a certificate of location approval violated their due process and equal protection rights under the U.S. Constitution.

The Second Circuit held that, in the absence of a showing that the plaintiffs were entitled to a certificate of location as a matter of right, he did not state a viable federal constitutional claim. The question, Judge Mansfield's opinion said, was whether plaintiffs' application to the zoning authorities "was one entitled to protection and enforcement by a federal court, which is a tribunal of limited jurisdiction." 58 F.2d at 58. The court of appeals answered that question in the negative, reasoning:

> Section 1983, upon which plaintiffs depend, does not guarantee a person the right to bring a federal suit for denial of due process in every proceeding in which he is denied a licence or a permit. If that were the case, every allegedly arbitrary denial by a town or city of a local license or permit would become a federal case, swelling our already overburdened federal court system beyond capacity. A federal court should not sit as a zoning board of appeals.

*Id.* (citation and internal quotation marks omitted). Expanding on that point, the Second Circuit went on to say:

> Indeed, even an outright violation of state law in the denial of a license will not necessarily provide the basis for a federal claim, at least *when the applicant has a state law remedy*. Otherwise every disappointed applicant, even though *the state provided reasonably adequate redress*, could invoke federal jurisdiction on the claim that the state administrative body acted arbitrarily in violation of his federal due process rights. To permit an influx of such cases into federal courts would violate principles of federalism, promote forum-shopping, and lead to unnecessary state-federal conflict with respect to governing principles in an area principally of state concern.

*Id*. at 58-59 (emphasis added and citation omitted).

In the case at bar, officials of the Towns of Guilford and Durham, motivated by a concern for the safety of residents of the towns, conducted public hearings, conferred, and Guilford ultimately decided to condition its final approval of Ferris's development upon the approval of Durham in respect of improving the road. One may grant Brian Ferris the sincerity with which he contends that

this action on Guilford's part was invalid under Connecticut law, and sympathize with the irritation that Ferris felt, confronted with the imposed necessity of paying for road improvements at a time when the economy was becoming stressed. If Ferris was correct in his view of the invalidity of Guilford's decision under state law, the Connecticut Superior Court had the authority to give Ferris full relief. Ferris had every right to the emotions he professes. He had every right to appeal Guilford's decision to the Superior Court, as in fact he did. He had every right to withdraw that appeal and enter into an understanding with the Town of Durham about improving Crooked Hill Road. But Ferris does not have a right to parlay his refusal to pursue an "available state law remedy" in the state court into an entitlement to bring a federal suit in this Court, alleging constitutional violations. To hold otherwise would bring about the undesirable consequences that Judge Mansfield summarized in the last-quoted part of his opinion in *Yale Auto Parts.*

For the foregoing reasons, the Guilford Defendants' Motion for Summary Judgment [Doc. 69] dismissing Plaintiffs' Amended Complaint will be granted, on the ground that Plaintiffs' claims are not ripe for federal adjudication, and this Court is without subject matter jurisdiction. In that circumstance, the Court does not reach any of the merits arguments contained in the parties' briefs. The dismissal of the Amended Complaint as to the Guilford Defendants will accordingly be without prejudice.

**B.      The Motion of Defendant Laura L. Francis for Summary Judgment**

Defendant Laura L. Francis, the First Selectman of the Town of Durham, moves for summary judgment on a number of merits-related grounds. Her threshold contention, however, is that Ferris's claims against her are barred by the applicable statute of limitations. This contention is well

founded.

In *Vaden v. Connecticut*, 557 F.Supp.2d 279 (D.Conn. 2008), Judge Arterton had occasion to consider the timeliness of § 1983 equal protection and due process claims. She held: "Because 42 U.S.C. § 1983 contains no express time limit for bringing claims, the Supreme Court directs courts to apply the statute of limitations applicable to personal injury claims in the state in which the tort is alleged to have occurred." 557 F.Supp.2d at 283 (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). Judge Arterton continued: "In Connecticut, the appropriate statute of limitations is found in Conn. Gen. Stat. §52-577, which sets a three-year limit for tort claims." *Id.* (citing *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994)). These are correct statements of the law. I apply them in the case at bar.

The Connecticut Appellate Court has said, in construing the Connecticut statute of limitations, that "the only facts material to the trial court's decision on a motion for summary judgment is the date of the wrongful conduct alleged in the complaint and the date the action was filed." *Shuster v. Buckley*, 5 Conn. App. 473, 477 (1985). In this case, the conduct of Durham officials of which Ferris complains came to its culmination in the decision reached by the Durham Board of Selectmen on August 20, 2007, and memorialized in its minutes of that date, to continue in effect Ferris's obligations with respect to "the construction agreement between the Town of Durham and Brian Ferris Construction, LLC." While Ferris's theory of the case is that Durham's participation in approval of the Crooked Hill Road was illegal and void *ab initio,* this date of August 20, 2007 may be regarded as the latest date upon which Durham's conduct complained of occurred. The statute of limitations began to run no later than that date. To be timely, Ferris had to file this action no later than August 20, 2010. He filed his original complaint in the state court in November

2010. The action is time barred.

The only contention Plaintiffs make on this point, Sur-Reply Brief [Doc. 92, p. 1], is that "[t]he claims plaintiff made in his Amended Complaint against Laura Francis concern her actions in coordination with the First Selectman of Guilford in 2007 and 2008, well within any three (3) year statute of limitation which is relevant to a Section 1983 action." It is hard to know what to make of this contention, which is unaccompanied by any citation to authority. If counsel means to suggest that the filing of the Amended Complaint in March 2012 resets the statute of limitations for the underlying claims, the short answer is that it does not. Nor does the Amended Complaint allege any post-August 20, 2007 act on the part of Francis that would constitute a continuing violation sufficient to toll the statute of limitations; the "continuing violation" doctrine "allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. It is thus a doctrine not about a continuing, but a cumulative, violation." *Vaden*, 557 F.Supp.2d at 284 (citation and internal quotation marks omitted). In the case at bar, Ferris could have brought suit against Durham's First Selectman when the Durham Board passed its August 20, 2007 resolution, if not before – just as Ferris was able to sue Guilford in Connecticut Superior Court on November 23, 2005, after Guilford promulgated its decision on November 2, 2005.

Francis's Motion for Summary Judgment [Doc. 68] dismissing the Plaintiffs' Amended Complaint will be granted, on the ground that the action is barred by the statute of limitations. That dismissal will be with prejudice.

### III.  CONCLUSION

For the foregoing reasons, the Court makes this Order.

1. The motion [Doc. 69] of Defendants Town of Guilford, Balestracci, Mazza, Kral, and Reid for summary judgment dismissing Plaintiffs' Amended Complaint is GRANTED.  The Amended Complaint is dismissed as to those Defendants WITHOUT PREJUDICE.

2.  The motion [Doc. 68] of Defendant Laura L. Francis for summary judgment dismissing Plaintiffs' Amended Complaint is GRANTED.  The Amended Complaint is dismissed as to that Defendant WITH PREJUDICE.

3.  The Clerk of the Court is directed to close the file.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         January 8, 2015

                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge